MISSOURI PACIFIC R'Y CO. v. JEROME HARRIS.

(No. 2265, Op. Book No. 2, p. 616.)

APPEAL from Tarrant County. Opinion by WALKER, R. S., P. J.

§ 1257. *Common carriers; contracts limiting their liability; invalid when in derogation of law; valid, when.* Harris sued the railroad company to recover damages alleged to have been sustained by him by the failure of the company to transport, within a reasonable time and

according to contract, a lot of cattle shipped by him on the company's line of railroad from Fort Worth, Texas, to be delivered at Chicago, Illinois. Among other defenses, the company set up a special contract entered into with Harris concerning the shipment, etc., of the cattle. One provision of said contract exempted the company "from *all* risk of damage which may be sustained by reason of *any* delay in such transportation, etc., not resulting from the wilful negligence of the agents of the company." Another provision was that Harris was to accompany the transportation of the cattle, feed, water and attend to the same on the trip, and assist in loading and unloading the same, and "that as a condition precedent to his right to recover any damages for any loss or injury to said stock, he will give notice of his claim therefor, in writing, to some officer of the company or its nearest station agent before said stock is removed from the place of destination above mentioned, or from the place of the delivery of the same to said Harris, and before such stock is mingled with other stock." The answer setting up this special contract alleged that the notice provided for in the same had not been given. Exceptions to this answer were sustained, and judgment rendered in favor of Harris for his damages. *Held,* 1. The provision in the contract limiting the liability of the company to the wilful negligence of its agents is invalid, because it is in contravention of article 278 of the Revised Statutes. The delay which is excused under this special contract is not confined to unavoidable delay, or such other delay as would excuse the common carrier from the consequences of damages produced by it. The proviso thus made in favor of the company is broad enough to exempt the company from damage resulting from even the negligence of its agents, unless such negligence was wilful. Such a stipulation as this can hardly be said to be a just and reasonable one in the eyes of the law, as applied to common carriers for hire, and unless it were so, it would not be a valid stipulation, even where the statute con-

tained no such inhibition as ours does against limiting the common law liability of carriers. [R. R. Co. v. Lockwood, 17 Wall. 357.] But under our statute referred to, such a stipulation, although it might be just and reasonable, is clearly invalid, because made in derogation of law. 2. In an elaborate discussion, reviewing many authorities, the court arrived at the conclusion that the other provision in the alleged contract, requiring notice of damage to be given by Harris, was not in contravention of the statute, was a just, reasonable and legal provision, and presented a good defense to the action as set forth in the company's answer. The opinion of the court upon this branch of the case is lengthy and exhaustive, and we cannot do more than give the conclusion reached and the authorities cited in support thereof. The authorities cited are as follows: Goggin v. R. R. Co. 12 Kansas, 416; 34 Ind. 197; 62 Penn. 83; 29 Ind. 21; 44 Ala. 101; 63 Mo. 314; 21 Wallace, 266; 21 Wis. 82.

§ **1258.** *Railroad companies are common carriers; constitutional provision.* The constitution [art. X, § 2] fixes the *status* of railroad companies as common carriers, and limits the power of the legislature to vary their liability from that which pertains to common carriers, as distinguished from private carriers.

§ **1259.** *Common carriers; contracts limiting liability of; statute on the subject.* The scope of article 278 of the Revised Statutes is to render inoperative such special agreements made in contravention of such liability of railroad companies as common carriers, as the common law attached to common carriers; therefore the statute does not superadd any additional or more stringent liability than existed at common law, but simply maintains that liability of common carriers, as known to the common law, intact, and exempt from the carrier's power to vary the same by any special agreement, or notice general or special, or by inserting exceptions in the bill of lading, or by limiting or restricting such liability in any other manner whatever.

§ **1260.** *Same; statute operates only upon carriers within this state.*   Article 278, Revised Statutes, by its terms applies to domestic carriers on land within this state, or on the waters entirely within the body of this state, and was never intended by the legislature to apply to and affect interstate carriage and traffic.   [H. & T. C. R'y Co. v. Park, *ante*, p. 142.]   Hence, in this case, the contract as to giving the notice of damage was not confined to this state, but was to have effect and operate in another state, and was not within the restriction of the statute.   But if the statute had been sufficiently general to have embraced contracts with common carriers for the transportation of goods beyond the limits of this state, as well as within it, then the limitation in the contract above referred to would have been invalid, wherever the contract was sought to be enforced.   [Rorer on Interstate Law, pp. 46–51; 24 Iowa, 412.]

§ **1261.** *Common carrier; what constitutes a.*   Neither the constitution nor the statute undertakes to establish a new and different rule of law in respect to the established maxim that "a carrier of goods for hire, although he may be a common carrier, is not such as to other goods or kinds of property than such as he holds himself out to transport in the capacity of a carrier of such for hire."   To bring a person within the description of a common carrier, he must be engaged in the business of carrying goods for others, as a public employment; he must undertake to carry goods of the kind to which his business is confined for persons generally, and he must hold himself out as ready to engage in the transportation of goods for hire as a business, and not as a casual occupation.   [Hutchinson on Carriers, § 47.]

§ **1262.** *"Goods, wares and merchandise;" meaning of, as used in the statute relating to common carriers.*   The words "common carriers of goods, wares and merchandise," as used in article 278 of the Revised Statutes, are not to be construed as either limiting or extending the class of property to be embraced by the carrier undertak-

ing to transport goods for hire.  Those terms are used descriptively rather than as of limitation, and are intended to embrace all common carriers, including as well those of live stock as of any other property, and at the same time having no operation to change any rule of common law, which would, without the influence of this statute, determine the relation of the carrier to any given or specified kind of property for transportation.

§ **1263.** *Carrier may relieve himself from transporting particular kinds of property by public notice; mixed question of law and fact.*   It is consistent with the rights of the common carrier of goods at common law, to relieve himself from obligation to carry particular kinds of goods, by giving public notice.   [Hutchinson on Carriers, § 112.] But this privilege does not extend to railroad companies under our statute, with respect to any property which they are adapted to transport, and which the public have a right to expect them to transport.   They are common carriers for the benefit of the citizens of the state, as to all such property as according to modern usage railroads have been accustomed to transport, and cannot limit their liability as such with respect thereto.

§ **1264.** *Live stock; railroad companies are common carriers with respect to, when, etc.*   Whenever a railroad company receives cattle or live stock to be transported over their road from one place to another, such company assumes all the responsibilities of a common carrier, except so far as such responsibilities may be modified by special contract.   [R. R. Co. v. Nichols, 9 Kansas, 235; Hutchinson on Carriers, § 221.]   And under our statute the modifications which may be made by special contract, and which are to operate within the limits of this state, can only be such as will not diminish the common law liability of the railroad as a common carrier.

§ **1265.** *Contract; lex loci contractus governs as to validity of.*   If a contract be *entire* and indivisible, and is to be partly performed in the state where it is made and partly in another, then the *lex loci contractus* or law

of the state where it was made governs as to its validity, and if invalid there, it is invalid everywhere else. [Rorer on Interstate Law, p. 51.]

April 22, 1882.            Reversed and remanded.

NOTE.— On a motion for rehearing, Judge Watts delivered the opinion of the court refusing the motion. No new questions of importance are discussed in the opinion, but the correctness of the former opinion of the court is strongly maintained by the clear and cogent reasoning of the learned judge.