# Western Railway Co. *v.* Harwell.

*Action against Railroad Company as Common Carrier, for Injuries to Live-Stock Transported.*

1. *Transportation of live-stock by railroad; duty and liability of carrier.* In the transportation of live-stock by railroad, the carrier assumes

[Western Railway Co. v. Harwell.]

the same responsibility for the safe carriage and delivery of the animals as in the carriage of other kinds of property, except for injuries resulting from their nature, habits, propensities, &c.; and he may, by special stipulation, contract for just and reasonable exemptions from other unusual risks incident to the service, limiting his liability to injuries resulting from the negligence of his own servants and agents.

2. *Exemptions in special contract; when enuring to benefit of connecting carrier.*—When live-stock, or other freight, is received by a carrier for transportation over its own road, limiting its liability by special exemptions, a connecting carrier, receiving the property at the terminus of the first road, can not claim the benefit of these exemptions for injuries happening on its own road; but, when the receiving carrier contracts for the through transportation of the freight over connecting lines to its destination, or, by authority of the connecting lines, fixes the compensation for the entire transportation, the special exemptions of the contract enure to their benefit, unless otherwise expressly limited; and also when the receiving carrier, while limiting its liability to its own road, contracts also for its "connecting lines," and it is declared that the exemptions shall enure to the benefit of the connecting lines, "unless they shall otherwise stipulate" on receiving the goods.

3. *Bill of lading signed by shipper without reading it.*—In the absence of fraud or mistake, a bill of lading containing special stipulations, signed by the shipper, is conclusive as to the terms of the contract; and he can not invalidate it by showing that he signed it without reading it, and that his animals were already on the cars.

4. *Burden of proof as to cause of injury.*—When the plaintiff has shown injury to one of his mules while in the custody of the carrier, the *onus* is on the carrier to show that it did not result from any negligence on the part of his servants or agents, or that it was within one of the specified exceptions in the bill of lading.

5. *Furnishing unsafe car for transportation of live-stock.*—If the carrier furnishes an unsafe and unsuitable car for the transportation of live-stock, this is negligence; and a recital in the bill of lading that the shipper examined the car, and found it safe and suitable, does not operate as an estoppel, but only imposes on him the burden of proving that it was unsafe, or unsuitable.

6. *Charge as to sufficiency of evidence on question of burden of proof as to negligence.*—When the carrier has adduced evidence rebutting the *prima facie* presumption of negligence, which arises from the proof of injury while the goods are still in his possession, but the rebutting evidence consists of the oral testimony of witnesses, the sufficiency and credibility of which are matters for the determination of the jury, a charge which asserts that the burden of proof is thereby shifted to the plaintiff, is properly refused, because calculated to confuse and mislead the jury.

7. *Stipulation as to notice of injury before removal of live-stock.*—In a bill of lading for the transportation of live-stock by railroad, a stipulation requiring notice of injury before the removal of the animals at the place of delivery, is generally held to be a reasonable regulation, especially when the shipper accompanies the stock, or agrees to accompany and care for them; but such stipulation is not strictly construed against the shipper, being intended to prevent frauds against the carrier; and it is sufficient if the notice is given within a reasonably short time after the delivery and removal of the animals, as determined by the jury.

8. *Stipulation limiting value of live-stock in case of injury.*—In a bill of lading for the transportation of a car-load of mules by railroad, a stipulation limiting the carrier's liability, in the event of injury, to $100 for a mule, is just and reasonable, especially when the shipper

[Western Railway Co. v. Harwell.]

agrees to accompany and care for the animals, and is allowed reduced rates on that account.

9. *Stipulation by shipper to accompany and care for live-stock.*—When a contract for the transportation of live-stock by railroad contains an express stipulation by the shipper, in consideration of reduced rates, that he will accompany and care for them, and his failure to do so proximately contributes to an injury to them, the carrier is not responsible.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. JESSE M. CARMICHAEL.

GEO. P. HARRISON, for appellant, cited *Central R. & B. Co. v. Smith & Chastain*, 85 Ala. 47 ; *S. & N. Ala. R. R. v. Henlein*, 52 Ala. 606 ; *Railway Co. v. Johnston*, 75 Ala. 596 ; 3 Amer. & E. Encyc. Law, 1, 2, 16, 28 ; 16 Am. & E. R. R. Cases, 122, 259 ; 38 *Ib.* 373.

JOHN M. CHILTON, *contra,* cited 52 Ala. 606; 85 Ala. 47; 88 Ala. 443.

CLOPTON, J.—Appellee sues to recover damages for injury to one of a car-load of mules, alleged to have been caused by the negligence of defendant. The mules were shipped from Columbia, Tennessee, consigned to the plaintiff at Opelika, Alabama, under a special contract made with the Louisville & Nashville Railroad Company. They were carried by the receiving carrier from Columbia to Montgomery, Alabama, and there delivered to defendant for transportation to Opelika, the roads of the two companies constituting connecting lines. Defendant sets up the special contract in defense of the action. In the general charge the court instructed the jury, that defendant is not a party to the contract of shipment entered into with the Louisville & Nashville Railroad Company, and that the limitations upon the common-law liability of carriers therein are restricted, and have reference alone to the transportation of the mules from Columbia to Montgomery, and do not enure to the protection of defendant.

When the transportation of live-stock is undertaken, the carrier, in the absence of a modifying contract, assumes the like responsibility for their safe delivery as a carrier of inanimate property, with the qualification, that he is not responsible for loss or injury resulting from the nature, habits, propensities, viciousness, or other inherent qualities of the animals. He may, however, contract for just and reasonable exemptions from the unusual risks pertaining to the transportation of such freight.—*E. T., Va. & Ga. R. R. Co. v. Johnston,* 75 Ala. 596.

[Western Railway Co. v. Harwell.]

The general rule is, that a carrier, over whose road the freight has to be carried in order to reach the point of destination, is entitled to the benefits of a contract stipulating for immunity from liability in general terms, entered into by the carrier receiving the freight for through transportation over connecting lines to a point beyond its own terminus; or when, by the contract, the compensation for the entire distance is fixed by authority of the carriers over whose roads the freight has to be transported, and the contract has respect to and provides for such other carriers. When the receiving company transports the freight for an agreed compensation to its terminus, under a contract limiting its own liability, the freight to be delivered at its terminus to a connecting line, the duty of a receiving carrier ceases with the delivery in a safe condition to such connecting line, and there is no privity between the shipper and the second carrier in respect to the special contract. In such case, the second carrier is not entitled to the benefit of the exemptions of the contract, and the liability fixed by law attaches upon the acceptance and receipt of the freight. 2 Amer. & Eng. Encyc. of Law, 871; 32 Amer. & Eng. R. R. Cases, 474. These general rules may be qualified by the circumstances and the terms and character of the contract. Though it may not be for through transportation, and though no rate for the entire distance is fixed, if the contract refers to, and embraces connecting lines, the carriers over whose roads the freight must be transported may adopt and act upon it, and thereby become entitled to the benefit of the valid exemptions created by the terms and conditions of the contract. *Babcock v. L. S. & M. S. Railway*, 49 N. Y. 491.

By the contract of shipment, the Louisville & Nashville Railroad Company undertook the transportation of the mules, at a stipulated rate, from Columbia to Montgomery, and there to deliver them to the connecting carrier, in the route to their destination, no compensation being fixed for the entire distance. The contract further stipulated, that all liability of the receiving carrier should terminate when the mules are ready for delivery to the connecting line at Montgomery. Were this all, were there no words in the contract extending its benefits to the connecting carrier, it would be construed, on the foregoing principles, as having reference only to the transportation from Columbia to Montgomery, and as providing only for immunity from liability of the Louisville & Nashville Railroad Company. But the contract purports on its face to be made with the Louisville & Nashville Railroad Company, "and its connecting lines", as party of the first part, and by it the shipper releases the Louisville & Nashville

Railroad Company, "and *its connecting lines*," from all liability, among other things, for and on account of any and all injury which the animals, or any of them may receive, in consequence of any of them being vicious, wild, unruly, or weak; and in consequence of any of them being killed, bruised, or otherwise injured; and for loss and damage to the animals from any cause or thing whatever, not resulting from the negligence of the agents or servants of the party of the first part. It is further agreed, "that when necessary for said animals to be transported over the line or lines of any other carrier or carriers to the point of destination, delivery of said animals may be made to such other carrier or carriers for transportation, upon such terms and conditions as the carrier may be willing to accept; provided, that the terms and conditions of this bill of lading shall enure to such carrier or carriers, unless they shall otherwise stipulate; but in no event shall one carrier be liable for the negligence of another."

The contract, in terms, refers to and provides for the transportation of the mules over the connecting road, and makes provision for delivering upon terms and conditions acceptable to the second carrier, if unwilling to transport upon the terms and conditions of the contract, and for their extension to the benefit of such carrier, if there be no stipulation otherwise. There is no pretense of any other stipulation. The mules were carried from Montgomery to Opelika in the same car in which they were shipped from Columbia, and by the same way-bill. The provisions of the contract, defendant's acceptance and receipt of the mules for transportation, in the same car furnished by the receiving carrier, without a stipulation otherwise, the payment to the Louisville & Nashville Railroad Company of the amount charged by that company as stated in the contract, its collection from plaintiff, and the charge of the reduced rate when live-stock is carried at the owner's risk, make a *prima facie* showing of ratification and transportation under the terms and conditions of the contract, and entitle the defendant to the benefit of its exemptions. The court should not have instructed the jury, as matter of law, that the contract was restricted to the transportation from Columbia to Montgomery, and did not enure to the protection of defendant.

A shipper may not be bound by a bill of lading, varying the terms of a verbal contract under which animals are received for transportation, when delivered to him after they are on the way to their destination, so that he is in no position to object and reclaim them. But such is not the present case. It is not pretended that there was any verbal agreement, and though, according to the testimony of plaintiff, the car in which the mules

were placed was on the track, and several hours elapsed before signing the contract, for aught that appears, it was signed by the agent at Columbia, and signed by plaintiff after full opportunity to learn its contents, and before the mules were *in transitu*—while he was in condition to reject and reclaim the mules. Neither is the contract invalidated by the mere fact, that plaintiff did not read it, or hear it read. It is well settled, that a person who signs a paper without reading it, or, if he can not read, without having it read, can not avoid it in the absence of fraud, misrepresentation, or mistake, on the ground of ignorance of its contents.—*Pac. Gu. Co. v. Anglin*, 82 Ala. 492; *Cannon v. Lindsey*, 85 Ala. 198; *Jones v. C. S. & M. R. R. Co.*, 89 Ala. 376. In *O'Bryan v. Kinney*, 74 Mo. 125, the effort was to invalidate a bill of lading delivered to the shipper after the cattle were received by the carrier, varying the terms of a prior oral agreement, under which it was claimed they were received and carried. It is said: "As a general rule, when goods are delivered to a carrier for transportation, and a bill of lading or receipt is delivered to the shipper, he is bound to examine and ascertain its contents; and if he accepts without objection, he is bound by its terms, and resort can not be had to prior parol negotiations to vary them. . . . . That he did not read the bill of lading, or know its contents, makes no difference. He might have read it, and it was his duty to do so; and in the absence of fraud or mistake, the writing must be taken as the sole evidence of the final agreement of the parties." The contract binds the plaintiff, notwithstanding he did not read it, there being no fraud or misrepresentation of its contents.

Consideration of other questions involved will proceed upon the assumption, for the purposes of this opinion, that defendant ratified the contract made with the Louisville & Nashville Railroad Company, and acted upon it in transporting the mules.

Ordinarily, the rule as to the burden of proof is thus stated, in general terms: The *onus* is primarily on the defendant to show that the injury did not result from negligence on its part, and the cause thereof was in the terms of the exception. The rule, however, should not be rigidly applied. That injury was not caused by neglect on the part of the carrier, and that it was within the terms of the exception, are relative propositions. The rule, accurately and reasonably interpreted, does not mean that the carrier must establish both of these propositions, independently of each other. When the carrier makes a *prima facie* showing, that the injury occurred without negligence on his part, this *prima facie* brings its cause within the

exception.—*Steele v. Townsend*, 37 Ala. 247. By the express terms of the contract of shipment, plaintiff released the Louisville & Nashville Railroad Company, and its connecting lines, from all liability in consequence of any of the mules being killed, maimed, bruised, or otherwise injured, and loss or damage from any cause, not resulting from the negligence of the carrier. That there was no negligence on the part of the carrier, may be shown by proof of the circumstances.

The contract of shipment recites, that plaintiff examined the car provided for the transportation of the mules by the Louisville & Nashville Railroad Company, and found it in good order and condition, and accepted it as sufficient and suitable for the purpose. They were taken to Opelika in the same car. The special contract changes the character of the employment, so far as to exempt the carrier from the liability of an insurer, but responsibility for the carrier's own misconduct or neglect remains. Failure to furnish a safe and suitable car is itself negligence. We are unwilling to adopt the rule laid down in some of the cases, that the carrier may, by contract, impose upon the shipper the obligation and duty of absolutely determining that the car provided is safe, suitable and sufficient for the transportation of live-stock. This virtually allows the carrier to contract for exemption from responsibility for his own negligence.— *Welsh v. Pittsburg, Ft. W. & Ch. R. R. Co.*, 10 Ohio St. 65. The statements in the contract, as to the character and condition of the car, are admissions that it was suitable and sufficient, and place upon plaintiff the burden of showing that it was unsafe and unsuitable; but do not estop him from recovering for an injury caused by a defect in the car. The admissions *prima facie* show that defendant performed its duty in this regard.

The defendant requested the court to charge the jury: "If the defendant has shown by the evidence that the car in which the mule was carried was a suitable one, and that the track was in good order, that the equipment and appliances of the track were adequate, that there was no fault or negligence on the part of the carrier in handling the stock, or in running the train, or in the arrangement thereof; then the fact, if it be a fact, that the evidence fails to show how the injury complained of occurred, is not sufficient to fix the liability on defendant; but such proof would shift the burden upon the plaintiff to show that the injury complained of was the result of some act of defendant, and if the plaintiff has failed to show this to the satisfaction of the jury, their verdict should be for defendant." If the facts hypothetically stated in the charge, be proved to the satisfaction of the jury, they overcome

[Western Railway Co. v. Harwell.]

the presumption of negligence, that follows when property is lost or injured while in the custody of the carrier, and no account or explanation is given of the loss or injury, and establish that the injury did not result from the negligence of defendant, thereby bringing the cause thereof within the exception of the contract, and entitle defendant to a verdict. These facts being proved, leave no room for shifting the burden of proof. But, if there be evidence *pro* and *con*, so long as the credibility of the witnesses, the sufficiency of the evidence, and the ascertainment of the facts rest with the jury, the burden of proof remains on defendant. Considering and comparing the two propositions of the charge and its phraseology, it would have been calculated, if given, to confuse and mislead.

The contract also contains a stipulation, that as a condition precedent to plaintiff's right of recovery, he must give written notice of his claim to the agent of the carrier from whom he receives the animals, before they are removed from the place of destination or of delivery, and before they are mingled with other animals. Such a stipulation has been generally held to be reasonable, especially when the owner or his agent accompanies the stock, or agrees to do so, and to care for them. *Goggin v. Han. Pac. Railway Co.*, 12 Kan. 416; *Dunn v. H. & St. J. R. R. Co.*, 68 Mo. 268. But such conditions should not be strictly construed. The object is to prevent fraud on the carrier. When the shipper does not discover, and by ordinary diligence could not have discovered the injury and its extent, before the animals are removed, notice thereof within such reasonably short time after their removal as effectually secures the carrier from fraud, is a substantial and sufficient compliance with the condition. In *Demsby v. W. P. Railway Co.*, 2 McCrary, 48, it was ruled, that such clause in the agreement is of no effect as to an illness occurring to animals, the extent of which could not have been known until after their removal from the car, and probably not for some little time after their arrival. The mules were delivered to plaintiff on the 29th day of December, and removed to his lot, where the injury was discovered soon afterwards; and notice of the claim was given to the agent of defendant on the 4th day of January following. Whether plaintiff could, by ordinary diligence, have discovered the injury and the extent before removing the mules, and whether the notice of the claim was given within a reasonable time thereafter, are questions for the jury.

The contract contains the further stipulation, that if damage occur for which the carrier is liable, the value at the date and place of shipment shall govern the settlement, but the amount

[Western Railway Co. v. Harwell.]

claimed shall not exceed, for a mule, one hundred dollars. Many cases hold, that a carrier can not limit his liability for negligence to a fixed sum. But the weight of authority seems to be, that where a valuation is agreed on by a contract fairly entered into between shipper and carrier, with the rate of freight based on the condition that the carrier assumes liability to the extent of the agreed valuation, the stipulation is a proper and lawful mode, even in case of loss or damage by negligence of the carrier, of adjusting the proportion between the value and the rate of freight received, and of protecting the carrier against exaggerated or fanciful valuations.—*Hart v. Penn. R. R. Co.*, 112 U. S. 331, where the question is elaborately considered, and the authorities *pro* and *con* cited. Our decisions are in accord with this ruling. As to the carriage of live stock, the rule declared is, if the limit to the liability appears greatly disproportionate to the real value of the animal and the amount of freight charged, it will be pronounced unjust and unreasonable; but, if it seems to have been intended to adjust the extent of liability to the reduced rate of freight charged, and to secure the carrier against exaggerated or fanciful valuations, it fixes the measure of the carrier's liability:—*S. & N. Ala. R. R. Co. v. Henlein*, 52 Ala. 606; s. c., 56 Ala. 368. The contract expresses in terms, that the consideration of the conditions and restrictions to the liability of the carrier is the reduced rate of freight charged, and the amount fixed does not appear to be disproportioned to the reduced rate. On the authority of the cases cited, we are forced to declare that the contractual limit fixes the measure of defendant's liability.

In view of the principle we have stated, that, under the circumstances of this case, the *onus* is on plaintiff to show a defect in the car, whether the charges requested by plaintiff are not abstract and calculated to mislead, admits of doubt. The propriety of a charge, which particularizes the fact, that there was a nail or other iron projection in the car that would likely cause the injury, of which there is no evidence, other than the opinion of witness that the wound was produced by the head coming in contact with a piece of iron, is at least questionable. But, as the charge asserts a correct proposition of law, if there be any evidence, however slight, tending to support the hypothesis, we can not pronounce giving such charge to be erroneous; and if abstract or misleading, its effect should have been avoided by qualifying or explanatory charges.

By the contract, plaintiff agreed to load and unload the mules at his own risk, and feed, water and attend them at his

own expense and risk, while they are in the stock-yards await-ing shipment, and while on the cars, or at feeding or transfer points, or where they may be unloaded for any purpose; and a free passage to the plaintiff or his agent on the train with the mules was part of the consideration of the contract. Neither the plaintiff nor his agent accompanied the mules in the course of transportation. If his failure to do so proximately contributed, on account of the want of attention, to the injury of the mule, defendant is not liable.

The assigments of error going to the rulings on evidence, not having been urged in the argument, have not been spe-cially considered; neither do we deem it necessary to unduly extend this opinion by separately noticing all the charges given and refused. An application of the principles herein asserted will be sufficient for determining the relevancy and competency of the evidence, and for a correct disposition of the case.

Reversed and remanded.